Case No. 2,188; New Process Fermentation Co. v. Maus, 20 Fed. 725; Case v. Brown, 2 Wall. (69 U. S.) 320; Howe v. Abbott, Case No. 6,766; Whittemore v. Cutter, Id. 17,601; Le Roy v. Tatham, 14 How. (55 U. S.) 156. But see Arkell v. J. M. Hurd Paper-Bag Co., Case No. 532; Heinrich v. Luther, Id. 6,327; Kuhl v. Mueller, 21 Fed. 510.

[Patent No. 4,472 was granted to H. A. Wells, April 25, 1846; reissued September 30, 1856 (No. 396), and May 19, 1868 (No. 2,942), and December 4, 1860 (Nos. 1,086 and 1,087). For other cases involving this patent, see Brett v. Quintard, 10 Fed. 741; Wells v. Jacques, Case No. 17,399; Gill v. Wells, 22 Wall. (89 U. S.) 1; Burr v. Duryee, 1 Wall. (68 U. S.) 531, Case No. 2,190; Burr v. Prentiss, Id. 2,194; Wells v. Gill, Id. 17,395; Wells v. Jacques, Id. 17,398; Brett v. Quintard, 17 Fed. 529; Wells v. Hagaman, Case No. 17,396; Wells v. Gill, Id. 17,394.]

BURR (DAVIDSON v.). See Case No. 3,602.

## Case No. 2,189.

### BURR v. DUNNAHOO.

[1 Cranch, C. C. 370.][3]

Circuit Court, District of Columbia. Dec. Term, 1806.

#### SLAVES—RIGHT TO FREEDOM.

A slave, coming from Virginia into Maryland more than a year after his master, and sold, is entitled to freedom under the statute of Maryland, 1796, c. 67.

Petition for freedom. 1st. Ground: Brought into Maryland contrary to law. 2d. Sold contrary to law.

Mr. Caldwell, for the petitioner [Moses Burr], relied on the act of Maryland, 1796, c. 67, and that he was brought in for sale. The evidence was that the negro came from Virginia to Mr. Nourse, more than one year after Mr. Nourse came here, and was sold by Mr. Nourse to the defendant [Patrick] Dunnahoo.

Verdict for the petitioner.

## Case No. 2,190.

### BURR v. DURYEE et al.

[2 Fish. Pat. Cas. 275.][1]

Circuit Court, D. New Jersey. Sept. Term, 1862.[2]

PATENTS—HAT BODIES—INFRINGEMENT—GRANTS BY PATENTEE—ESTOPPEL OF GRANTEE—EQUITY—RELIEF—FORFEITURE.

1. The value of the franchise granted to a patentee depends on the mode in which he may find it most profitable to exercise it.

2. He has a right to divide out his monopoly in the category of its locality, and may thus create any number of exclusive franchises, each bounded by the limits of a city, county, or state,

[3] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

[2] [Affirmed in Burr v. Duryee, 1 Wall. (68 U. S.) 531.]

where the patentee himself may be treated as a trespasser, if he interferes.

[Cited in Heaton Peninsular Button-Fastener Co. v. Dick, 55 Fed. 25.]

3. He may find it most profitable, as in the case of a labor-saving machine, where a cheaper article may engross the whole market, to retain the monopoly wholly under his own control and that of his agents or licensees.

4. In other cases the patentee may have the value of his franchise, not in making the machine, but in its use, either wholly by himself or by his special licensees, paying him a certain toll, tariff, or annuity, for a license to use a certain number of the machines invented.

[Cited in Heaton Peninsular Button-Fastener Co. v. Dick, 55 Fed. 25.]

5. Equity may relieve against a forfeiture; it never inflicts one.

6. The recitals in a deed can estop no one but parties or privies who are claiming under or against it, and in a controversy founded upon its covenants.

[Cited in Baltimore Car-Wheel Co. v. North Baltimore Passenger Ry. Co., 21 Fed. 50.]

7. The purchase of a license forms no bond or allegiance to the patentee; or an estoppel to the licensee from averring or proving any defense in an action for the infringement of a patent, which any other person might use.

[Cited in Baltimore Car-Wheel Co. v. North Baltimore Passenger Ry. Co., 21 Fed. 50.]

8. Previous to the act of July 4, 1836 [5 Stat. 117], which established a board or bureau composed of competent examiners, patents had frequently been adjudged invalid from the insufficiency of the specification; usually because, by inadvertency, accident, or mistake, the patentee had not sufficiently separated the old from the new, and had claimed more than he was entitled to. Few inventors or even learned lawyers, were capable of correctly and clearly setting forth in a specification the proper limits of the just claim of the invention. Section 13 of the act of July 4, 1836, was intended to remedy this evil by permitting the patentee to surrender his defective patent, and have it renewed in proper form, under the limitations named in the section. This valuable and just privilege given to inventors has been much abused by their assignees. Since the date of the act of 1836, not only the patent office but the bar can furnish gentlemen fully competent to the task of drawing up proper specifications, and but little liable to commit blunders from inadvertency. Nevertheless, this privilege of surrender and reissue is resorted to more frequently than ever. Section 13 of the act of 1836 does not absolutely require that the suggestion, that a patent is inoperative and void, should be made under oath; nor does it appear that the patent office requires that the fact should have been judicially ascertained.

[Cited in Cahart v. Austin, Case No. 2,288.]

9. Taylor was not the inventor of the conical cover used in hardening hat bodies formed on a cone, nor rubbing them by a reciprocating motion, but merely of a certain combination of devices to produce a certain effect. Both the operation and the result were well known, and the invention consisted only of the devices combined to perform the operation and produce the result. It was open to every other person to make any other combination of devices to perform the operation, which was not a mere colorable adoption of the patentee's combination.

[See note at end of case.]

[Cited in Wells v. Jacques, Case No. 17,399.]

These were three bills in equity filed by the same complainant [Henry A. Burr] to restrain the same defendants [Peter S. Duryee, Henry A. Jacques, and Henry W. Duryee]